CHRISTOPHER KELLY              :
                                      :
                                      :

     v.                            :      Civil No. CCB-09-118
                                      :      Criminal No. CCB-06-222
                                      :

UNITED STATES OF AMERICA     :
                                      :
                                      :

## MEMORANDUM

Now pending before the court is Christopher Kelly's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Mr. Kelly alleges that both his appellate and trial counsel provided him with ineffective assistance of counsel and that the trial court committed error in not granting his second request for new counsel. For the following reasons, the petitioner's motion will be denied.

## BACKGROUND

On May 16, 2006, Mr. Kelly was charged with robbery in violation of the Hobbs Act, possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §§ 1951 and 924(c), and conspiracy for participating in six armed robberies committed in three states. By the time of trial, he was facing a mandatory 82 years imprisonment on consecutive § 924(c) counts. Mr. Kelly was originally represented by defense counsel Gerald Ruter, Esq., an experienced member of the Criminal Justice Act panel. On December 7, 2006, Mr. Kelly requested that the court replace Mr. Ruter as his attorney because he was dissatisfied with his performance. Although the court found no merit in Mr. Kelly's complaints, the court granted his

request and assigned him another experienced member of the CJA panel, Dwight Crawley, Esq.

On January 17, 2007, Mr. Crawley represented Mr. Kelly at a hearing on a motion to suppress evidence obtained during a search of Mr. Kelly's car. The court denied the motion. Following the denial of his motion to suppress, Mr. Kelly once again requested the court to appoint new counsel. Because the court had previously granted Mr. Kelly's request for new counsel, and because there was no basis to challenge Mr. Crawley's performance, the court denied his motion.

Following the court's denial of his request for new counsel, Mr. Kelly waived his right to a jury trial. On February 26, 2007, Mr. Kelly's trial commenced, and the government began to present its case. Just before the government was prepared to call Mr. Kelly's co-defendant and nephew, William Flowers, as a cooperating witness, Mr. Kelly communicated to his counsel and the government that he was considering pleading guilty. (*See* Trial Tr. 86:17-88:2, Feb. 26, 2007.) After negotiations with Mr. Crawley, the government agreed to a Rule 11(c)(1)(C) plea of 22 years imprisonment.[1] The court granted a brief recess for the government to prepare a final plea document reflecting the terms of the plea agreement and for Mr. Kelly to make a final decision about whether he would, in fact, like to plead guilty. When the court reconvened an hour later, Mr. Kelly expressed hesitation at entering a guilty plea unless it was possible for the court to conduct a combined rearraignment and sentencing that day. (*See id.* at 89:12-90:21.) The court agreed to conduct a combined rearraignment and sentencing after receiving a copy of the

---

[1] Prior to Mr. Kelly's decision to go to trial, the government had offered him a plea agreement of 20 years imprisonment. That offer was rescinded one week before trial. When Mr. Kelly expressed a renewed interest in pleading guilty during the course of the bench trial, the government suggested 25 years imprisonment. Defense counsel, Mr. Crawley, was able to negotiate the agreement down to 22 years imprisonment. (*See* Trial Tr. 114:20-115:5.)

Pretrial Services Report and reviewing the plea agreement. (*See id.* at 90:22-91:3; 122:14-17.)

Following the Rule 11 colloquy, the court sentenced Mr. Kelly to the agreed upon 22-years

imprisonment. (*See id.* at 125:4-5.)

Despite waiving his right to appeal in his plea agreement, Mr. Kelly filed a notice of

appeal on March 14, 2007. Mr. Kelly requested new counsel for his appeal, and was appointed

CJA panel attorney Richard Brown, Esq. Mr. Brown filed an *Anders* brief on behalf of Mr.

Kelly, arguing that his guilty plea was involuntary because he was coerced into accepting the

plea agreement by his family members. (*See* Appellate Brief at 11, Government's Ex. 5.) The

Fourth Circuit affirmed Mr. Kelly's conviction by judgment entered on October 24, 2007.

On January 20, 2009, Mr. Kelly filed a motion to vacate his sentence under 28 U.S.C. §

2255. The government has opposed the motion.

## STANDARD OF REVIEW

To state a claim for relief under 28 U.S.C. § 2255, a defendant must prove that one of the

following occurred: (1) his sentence was "imposed in violation of the Constitution or laws of the

United States"; (2) the "court was without jurisdiction to impose such a sentence"; or (3) the

"sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral

attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to

be served upon the United States attorney, grant a prompt hearing thereon, determine the issues

and make findings of fact and conclusions of law with respect thereto." *Id.* § 2255(b). If the

prisoner succeeds in making that showing, "the court shall [1] vacate and set the judgment aside

and shall discharge the prisoner or [2] resentence him or [3] grant a new trial or [4] correct the

sentence as may appear appropriate." *Id.* § 2255(b).

## ANALYSIS

### A.      Timeliness

The government argues that Mr. Kelly's petition should be barred as untimely. A motion

to vacate, set aside, or correct a federal sentence must be filed within one year from "the date on

which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). This one year statute

of limitations begins to run on the date when the time for filing a petition of certiorari expires,

which is 90 days after the entry of judgment by the Court of Appeals. *See Clay v. United States*,

537 U.S. 522, 525 (2003). Here, the Fourth Circuit's judgment was entered on October 24, 2007.

(*See* ECF No. 66.) The one year statute of limitations therefore did not begin to run until January

24, 2008. Because Mr. Kelly filed his motion to vacate on January 20, 2009, his petition is

timely.

### B.      Ineffective Assistance of Counsel Claims

Mr. Kelly raises numerous allegations of ineffective assistance of counsel against both

his trial and appellate counsel. Ineffective assistance claims are reviewed under a two-part test

established in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance

of counsel, it must be shown that the counsel's performance was deficient and that the defendant

was prejudiced by the deficient performance. *Id.* at 687. Representation is deficient if it falls

below "an objective standard of reasonableness," i.e., was not "within the range of competence

demanded of attorneys in criminal cases." *Id.* at 687-88. The standard for assessing such

competence is "highly deferential" and is founded on a "strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To prevail,

a petitioner must overcome the presumption that the challenged action might be considered "sound trial strategy," *id.*, and must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. An attorney's acts or omissions are "reviewed individually"; acts or omissions "that are not unconstitutional individually cannot be added together to create a constitutional violation." *Fisher v. Angelone*, 163 F.3d 835, 852-53 (4th Cir. 1998).

To prevail on the prejudice prong, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. When a petitioner alleges ineffective assistance of counsel following the entry of a guilty plea, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This is an objective inquiry, and dependent on the likely outcome of a trial had the defendant not pleaded guilty. *Hill*, 474 U.S. at 59-60. A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted even had the attorney's performance been deficient. *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

### 1. Claim against appellate counsel

Mr. Kelly alleges that his appellate counsel's representation was deficient because he failed to investigate Mr. Kelly's claim that his trial counsel coerced him into a guilty plea. Mr. Kelly alleges that "Trial Counsel knew the Petitioner was not willing to accept the Government's plea offer. So, during the breaks in the bench trial proceeding counsel would tell different family members, it would be better if Petitioner accepted the Government's plea offer." (Pet'r's Mot. to Vacate at 6-7.) Mr. Kelly's claim is without merit.

On appeal, the petitioner's appellate counsel, Mr. Brown, argued that Mr. Kelly's guilty plea was produced by coercion and duress. Although he may not have specifically argued that trial counsel instigated the alleged pressure to take a plea agreement, Mr. Brown did argue that Mr. Kelly's decision to accept a plea agreement was the product of pressure applied to him by his family members, many of whom were in court for his trial. (*See* Appellate Brief at 11, Government's Ex. 5.) Because Mr. Brown, in fact, argued that Mr. Kelly's guilty plea was involuntary on appeal, Mr. Kelly's motion to vacate based on Mr. Brown's ineffective assistance of counsel will be denied.

### 2. Claims against trial counsel

Mr. Kelly alleges that his trial counsel's representation was constitutionally deficient in four ways: (1) by failing to object to hearsay testimony at a suppression hearing and failing to file a motion to suppress such testimony after the fact; (2) by failing to investigate and call alibi witnesses at his bench trial; (3) by coercing him to enter into a guilty plea; and (4) by failing to oppose his "career offender" status at sentencing. All of Mr. Kelly's claims must fail.

### a. Failure to object to hearsay testimony at suppression hearing

Mr. Kelly's first claim is barred by his guilty plea. "It is well-established that a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations." *Fields v. Att'y Gen. of Maryland*, 956 F.2d 1290, 1294 (4th Cir. 1992); *see also Tollett v. Henderson*, 411 U.S. 258, 266 (1973) ("The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence of such an antecedent constitutional infirmity."). Any claims of ineffective assistance of counsel concerning constitutional or statutory violations that "occurred prior to [a defendant's] guilty plea and [are] unrelated to it" are foreclosed from review. *Fields*, 956 F.2d at 1296 (citing *Tollett*, 411 U.S. at 258). The alleged failure by Mr. Kelly's trial counsel to object to hearsay testimony at a suppression hearing occurred prior to his guilty plea and is unrelated to it. The claim is therefore foreclosed from review.[2]

### b. Failure to investigate and call alibi witnesses

Mr. Kelly's second claim against his trial counsel—that he failed to investigate or call witnesses that would have corroborated Mr. Kelly's alibi defense—also must fail. Mr. Kelly alleges that three witnesses who could have provided him with an alibi were never contacted by his trial counsel to testify. Mr. Kelly has attached two affidavits, one from the mother of his two younger children and one from his aunt, to support his allegations. The affidavits vaguely state that each woman was available to provide "exculpatory testimony" on Mr. Kelly's behalf, but were never contacted by trial counsel. (*See* D. Davis Aff. ¶ 7; A. Kelly Aff. ¶ 2.) Neither affidavit, however, provides details sufficient to illuminate what kind of exculpatory testimony

---

[2] The court notes that even if the claim were not barred, it would nonetheless fail because hearsay testimony is permitted at a suppression hearing. *See United States v. Matlock*, 415 U.S. 164, 172-75 (1974).

might have been offered on Mr. Kelly's behalf. Nor does either affidavit give an alibi for Mr.

Kelly for any of the robberies for which he was charged, let alone those to which he pled guilty.

In fact, Danyetta Davis, one of Mr. Kelly's alleged alibi witnesses, was in court the day of his

bench trial and was subpoenaed to testify as a witness *for the prosecution*. (*See* D. Davis Aff. ¶

2.) These bare-bones affidavits are not sufficient to create a reasonable probability that Mr. Kelly

would have gone to trial had his trial counsel investigated and called them as witness at trial.

Indeed, Mr. Kelly's trial counsel did not even have the opportunity to call a witness at the bench

trial because Mr. Kelly chose to plead guilty before the government finished presenting its case.

Moreover, "allegations in a § 2255 motion that directly contradict the petitioner's sworn

statements made during a properly conducted Rule 11 colloquy are always palpably incredible

and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005)

(internal quotation marks omitted). "[A] district court should, without holding an evidentiary

hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the

sworn statements." *Id.* at 222. Here, Mr. Kelly admitted to participating in five robberies and

attempting to commit one more in the plea agreement's statement of facts. (*See* Plea Agmt. at 8-

11.) He also signed a statement acknowledging, "I have read this Statement of Facts and

carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it.

I do not wish to change any part of it." (*Id.* at 11.) During the Rule 11 colloquy conducted by the

court on February 26, 2007, Mr. Kelly also admitted that he "reviewed the factual and Advisory

Guideline stipulation" and that he understood and voluntarily agreed to it. (Trial Tr. 104:20-

105:4.) Because of Mr. Kelly's admissions of guilt during his Rule 11 colloquy, his claim that he

had alibi witnesses itself is not credible, let alone his claim that his attorney was ineffective for

not calling the witnesses to testify. His claim must therefore fail.

### c. Coercing Guilty Plea

Mr. Kelly next alleges that his trial counsel's representation was deficient because he coerced Mr. Kelly into accepting a plea agreement. A defendant, however, cannot relitigate issues previously rejected on direct appeal under the guise of a collateral attack. *See United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)). On direct appeal, the Fourth Circuit reviewed and rejected Mr. Kelly's claim that his guilty plea was the product of coercion and duress. The court held that Mr. Kelly's guilty plea "was knowingly and voluntarily entered after a thorough hearing pursuant to Rule 11" and that his "unsupported claims of duress or coercion [were] insufficient to overcome his sworn statements to the contrary made during the plea hearing." *United States v. Kelly*, 251 Fed. App'x 260, 261 (4th Cir. 2007). This ineffective assistance of counsel claim is therefore nothing more than a collateral attack on an issue previously rejected on direct appeal. Mr. Kelly may not relitigate the issue.

### d. Failing to oppose his "career offender" status at sentencing

Finally, Mr. Kelly alleges that his trial counsel, Mr. Crawley, misinformed him about his status as a career criminal. Mr. Kelly alleges that if Mr. Crawley had investigated his criminal history and properly informed the petitioner that he was not a career offender, "there is a good chance [he] would have plead[ed] not guilty, and faced his chance at trial and the sentencing guidelines." (Pet'r's Mot. to Vacate at 13.) Mr. Kelly's claim fails both prongs of the *Strickland* test. First, Mr. Kelly was aware at the time of his sentencing that there was no agreement about his criminal history category, and that his criminal history and status as a career offender might

alter his sentence. As part of his plea agreement, Mr. Kelly acknowledged that:

> There is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender . . . . If the Defendant is found to be a career offender, then the base offense level applicable in this case would be determined by application of U.S.S.G. § 4B1.1(c)(2) following preparation of a criminal history report.

(Plea Agreement at 5.)

Mr. Kelly also was advised of his right to have a presentence report conducted in which his criminal history would have been calculated, and that he was forgoing this right by proceeding immediately to sentencing. Mr. Kelly nonetheless specifically instructed Mr. Crawley to proceed with sentencing before giving him an opportunity to investigate Mr. Kelly's criminal history background through a presentencing report. Indeed, Mr. Crawley made the following representation to the court on Mr. Kelly's behalf:

> I think it's [Mr. Kelly's] position at this point that he wishes to have this matter ended as quickly as possible.
>
> As it relates to the amount of time that he is facing, he understands how much time he is facing, the time he will actually have to serve. He is pretty much aware of all that, Your Honor. He wants to move on with his life. That's what he has communicated to me as well, not wanting to have his family come back for another hearing.
>
> He understands his rights, Your Honor. I have communicated to him that he has a right to have a presentence report done, to have the criminal Sentencing Guidelines calculated. He understands all of those things, Your Honor.

(Trial Tr. 90:7-21.)

Moreover, Mr. Crawley's decision to forgo a presentence report was the product of sound and reasonable professional judgment in this case. It is undisputed that at the time of his bench trial, Mr. Kelly was facing a mandatory 82 years imprisonment. Under the Rule 11(c)(1)(C) plea agreement offered by the government, Mr. Kelly was guaranteed a sentence of 22 years imprisonment, far below what he would have faced had he been convicted at trial. Given the

significantly reduced sentence Mr. Kelly would receive under the plea agreement, and Mr.

Kelly's insistence that he would only accept the offer if he was sentenced the same day, Mr.

Crawley's decision to forgo a presentence report or to challenge Mr. Kelly's career offender

status was reasonable.

Second, even if Mr. Kelly could demonstrate that Mr. Crawley's performance was

deficient, he cannot show prejudice. As an initial matter, Mr. Kelly has provided no evidence

that he was improperly designated as a career offender at sentencing. Even setting this aside,

however, Mr. Kelly was facing a mandatory 82 years imprisonment at the time of his bench trial

for one count of conspiracy to commit robbery, four substantive counts of Hobbs Act robbery,

four counts of accompanying 924(c) violations, and one count of unlawful possession of a

firearm by a felon. (*See* 2d Superseding Indictment, ECF No. 50.) Under the government's Rule

11(c)(1)(C) plea agreement, he was guaranteed a sentence of 22 years imprisonment, or the

opportunity to withdraw his plea. Mr. Kelly's argument that had he been correctly informed

about his status as a career criminal, he would not have entered a guilty plea for 22 years

imprisonment and would have proceeded to trial where he faced 82 years imprisonment if

convicted is speculative at best, if not entirely unreasonable. Accordingly, Mr. Kelly's motion to

vacate his sentence based on Mr. Crawley's alleged ineffective assistance of counsel will be

denied.

## C.    Trial Court Error Claim

Mr. Kelly also alleges that the trial court abused its discretion when it denied his second

request for new counsel. This claim was not raised on appeal. A sentence may be challenged

through a § 2255 motion based upon errors that could have been, but were not, pursued on direct

appeal in two narrow circumstances: (1) if the petitioner can show cause and actual prejudice resulting from the errors of which he complains; or (2) if the petitioner can demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. *See United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). Here, Mr. Kelly did not raise his claim of trial court error on direct appeal, and neither exception to the waiver of his claim applies. Accordingly, this claim is foreclosed from review, and in any event, no error has been shown.

A separate Order follows.


July 21, 2011                                    _____/s/_____
Date                                             Catherine C. Blake
                                                 United States District Judge